# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES JAMES,** | : | **CIVIL ACTION** |
| *Plaintiff, pro se* | : | |
| | : | **NO. 23-1918** |
| **v.** | : | |
| | : | |
| **J.P. MORGAN CHASE BANK,** | : | |
| *Defendant* | : | |

s

NITZA I. QUIÑONES ALEJANDRO, J.                    SEPTEMBER 3, 2025

# MEMORANDUM OPINION

Plaintiff Charles James ("Plaintiff"), proceeding *pro se*, filed this civil action against Defendant J.P. Morgan Chase Bank ("Defendant"), asserting claims of race discrimination, (Count I), and tortious interference with contractual relations, (Count II).  (ECF 12).  By Order dated February 29, 2024, Count I was dismissed.  (ECF 25).  At Count II, Plaintiff's tortious interference claim, Plaintiff alleges that Defendant's act of freezing the funds in his Chase Bank checking account resulted in the loss of a business contract and of a relationship with a business partner.

Presently before the Court are:  Defendant's motion for summary judgment, in which Defendant argues that Plaintiff has failed to adduce evidence that Defendant was aware of the business contract or business relationship at issue at the time it froze his account, (ECF 46), Plaintiff's response in opposition, (ECF 48), and Defendant's reply, (ECF 51).  The issues presented in the motion are fully briefed and, therefore, this matter is ripe for disposition.  For the reasons set forth herein, Defendant's motion for summary judgment is granted, and judgment is entered in favor of Defendant.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant; here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The facts relevant to the underlying motion are summarized as follows: [1]

On or around April 2022, Plaintiff received a $62,000 check related to a personal injury lawsuit. On April 14, 2022, Plaintiff approached his friend and business partner, John Morris Anderson ("Anderson"), seeking advice about what to do with the check. At Anderson's suggestion, Plaintiff elected to open a checking account and deposit the check at a Chase Bank located at 1000 S. Broad Street, Philadelphia, PA 19146.

On the same day, Anderson accompanied Plaintiff to that Chase Bank to assist him in opening a checking account, speaking on behalf of Plaintiff to a Chase Bank representative. A checking account was opened in Plaintiff's name, and the $62,000 check was deposited. Plaintiff then wrote Anderson a personal check for $7,000 to pay Anderson back for loans he had previously made to Plaintiff.

Sometime after April 14, 2022, a Chase Bank representative contacted Plaintiff and informed him that the representative had overheard Plaintiff's conversation with Anderson and that the conversation raised suspicion that Plaintiff might be falling prey to a scam. The representative informed Plaintiff that his account might be frozen due to this perceived suspicious activity. Plaintiff informed the representative that he knew and trusted Anderson. Nonetheless, when Plaintiff called the bank back the next day, he was informed his checking account had been frozen. Plaintiff alleges his account was frozen in excess of fifteen months.

Plaintiff and Anderson had entered into a contract on March 7, 2022 related to the administration of a Miss Black America Pageant (the "Pageant Contract"). Plaintiff alleges that, as a result of Defendant freezing his checking account, and Plaintiff's subsequent requests for additional loans from Anderson, Anderson decided not to perform on the contract and terminated his business relationship with Plaintiff.

---

[1] These facts are taken from the parties' briefs, exhibits, and statements of facts. To the extent that any facts are disputed, such disputes will be noted and, if material, will be construed in Plaintiff's favor pursuant to Federal Rule of Civil Procedure 56.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, Rule 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met this initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P 56(c)(1)(A)-(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co.*

*of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

**DISCUSSION**

As noted, Plaintiff asserts a common law claim for tortious interference of contract, contending that Defendant's action of freezing of his Chase Bank checking account resulted in his losing the Pageant Contract with his business partner, Anderson. Defendant moves for summary judgment on the ground that Plaintiff has failed to adduce evidence showing Defendant had actual knowledge of the existence of the Pageant Contract or the business relationship between Plaintiff and Anderson, and, thus, could not have tortiously interfered with said relationship. The Court agrees with Defendant.

Under the Restatement (Second) of Torts § 766(a), adopted by Pennsylvania, the elements of a cause of action for tortious interference with contractual relations are the following:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*See Empire Trucking Co. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 932–33 (Pa. Super. Ct. 2013). To succeed on a tortious interference claim, a plaintiff must adduce evidence to prove each element. *See id.* at 923-36. In determining whether these elements have been met, "the court must look to section 767 of the Restatement (Second) of Torts," which lists the following "factors for consideration: 1) the nature of the actor's conduct; 2) the actor's motive; 3) the interests of the

4

other with which the actor's conduct interferes; 4) the interests sought to be advanced by the actor; 5) the proximity or remoteness of the actor's conduct to interference, and 6) the relationship between the parties." *Maverick Steel Co. v. Dick Corp./Barton Malow*, 54 A.3d 352, 355 (Pa. Super. Ct. 2012).

Here, Plaintiff satisfies the first element – *i.e.*, an existing contractual relationship – as he and Anderson are alleged to have entered into the Pageant Contract on March 7, 2022 – prior to Defendant freezing Plaintiff's checking account.  (ECF 46-1 Ex. B) (Pageant Contract).  However, Plaintiff's claim fails on the second element.  To subject a party to liability for tortious interference of contract, the party "must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract."  Restatement (Second) of Torts § 766 cmt. i (1979).  Even if a party's conduct in fact interfered with a current or potential contractual relationship, the party does not "intentionally cause that failure if he has no knowledge of the contract."  *Id.*

Defendant has met its initial burden of showing that Plaintiff failed to adduce evidence to establish that Defendant knew of the existence of the Pageant Contract and that Defendant intended to interfere with Plaintiff's and Anderson's relationship at the time Defendant froze Plaintiff's checking account.[2]  Defendant points to several pieces of evidence in the record to support this argument.  First, Plaintiff's deposition testimony indicates that Plaintiff has no record evidence (emails, texts, or other communications) showing that Defendant was aware of the Pageant Contract prior to engaging in this lawsuit.  *See* (ECF 46 at 10-11); (ECF 46-1 Ex. C).  Second,

---

[2]    Plaintiff's own allegations indicate that Defendant contacted Plaintiff about freezing his checking account out of suspicion he was falling prey to a scam, not to interfere with the Pageant Contract.  *See* (ECF 12 ¶ 6) ("Resulting from Plaintiff James having written the check to Mr. John Anderson," a representative of Defendant shared with Plaintiff their concern that "Mr. Anderson could possibly be a fraud, or a scammer").  Plaintiff has adduced no evidence to question this motivation for Defendant freezing his account.

Anderson testified that Defendant "was not involved at all with" and "didn't know anything about the [P]ageant [C]ontract." (ECF 46-1 Ex. H). Third, in his interrogatory response, Plaintiff states that he went to the Chase Bank on April 14, 2022 "merely to make a deposit" and that, at that time, there was no mention of the Pageant Contract. (ECF 46-1 Ex. G).

This Court also finds that Plaintiff has failed to rebut Defendant's evidence, as Plaintiff's response fails to point to, nor attaches, any record evidence showing Defendant knew of the existence of the Pageant Contract or intended to interfere with this contractual relationship at the time Defendant froze Plaintiff's checking account. *See generally* (ECF 48). Indeed, portions of Plaintiff's response seem to admit Plaintiff first presented the Pageant Contract to Defendant when he filed this lawsuit on May 19, 2023:

> Plaintiff, James, had presented his (Plaintiff James') contract with Mr. Anderson, on the date of 5/19/2023, whereupon, Defendant, Chase was in full possession, and knowledge of Plaintiff, James' contractual relationship with Mr. Anderson and Mr. Anderson's Miss Black America Pageant.[3]

ECF 48 at 10. Nonetheless, Plaintiff appears to contradict himself in his response, indicating that "at the time Defendant, Chase interfered with the [Pageant Contract], Defendant, Chase was fully aware of the contractual relationship between Plaintiff, James, Mr. Anderson, and [the Pageant]." ECF 48 at 5. There is clear record evidence for the former statement – Plaintiff attached the Pageant Contract to the original complaint, thus notifying Defendant on May 19, 2023 of its existence. (ECF 1 Ex. O). Plaintiff, however, provides no record evidence for that latter statement. The nonmoving party, here Plaintiff, may not rely on only "bare assertions, conclusory allegations." *Fireman's Ins. Co. of Newark,*, 676 F.2d at 969; *see also* Fed. R. Civ. P. Fed. R. Civ.

---

[3]    While James alleges in the Amended Complaint, (ECF 12), that Defendant froze his checking account "in excess of fifteen months," which would mean the account remained frozen after his filing the present action on May 19, 2023, he has pointed to no record evidence, nor attached any exhibits, to support that proposition. *See generally* (ECF 48); *see also Celotex,* 477 U.S. at 324 (the nonmoving party must "go beyond the pleadings").

P 56(c)(1)(A)-(B) (requiring a factual position to be supported by "particular parts of material in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials").  Because Plaintiff provides no evidentiary support for his statement that Defendant knew about and intended to interfere with the Pageant Contract at the time it froze his checking account, he has not adequately rebutted Defendant's position there is a dearth of factual support for that proposition.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment, (ECF 46), is granted as to Plaintiff's remaining claim (Count II) for tortious interference of contract, and judgment is entered in favor of Defendant.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO,* J.